We'll hear argument next, this morning, case 17-1174, Nieves v. Bartlett. Mr. Borgeson. Mr. Chief Justice, and may it please the Court, this case shows why retaliatory arrest claims should be governed by the well-grounded common law rule that the existence of probable cause would protect against liability for enforcing the criminal law. First, determining causation in these claims is especially difficult for the reasons the Court recognized in Lozman. And second, the law's tools for filtering out speculative claims and giving officers a margin for error don't work well in these cases. And the Court doesn't want a rule where an officer can be held into court on any routine arrest and forced to defend the purity of his motives, however reasonable his actions. Nor should the Court want a rule that gives officers a reason to hesitate in situations where they should be able to act decisively. I want to start with a point about complexity, because I believe this case has all of the elements the Court identified in Lozman. One, speech can be a valid consideration for the officers in deciding whether to effectuate an arrest. Sotomayor Why doesn't qualified immunity take care of that? If in fact a speech by its nature is disruptive or otherwise interferes with the actions of the police officer, that would give them qualified immunity, whether there was probable cause or not. I don't believe that's the way the qualified immunity works, because if the speech is protected, then the question is, well, was it clearly established that you couldn't retaliate against someone for their protected speech? And, Ellie, if this Court rules in the Respondent's favor. Sotomayor Well, no. My point is that one of your arguments has been that almost all arrests involve speech, that in some form or another, speech is implicated in the incident of arrest. But if it's truly integrated in the incident of arrest, something like, I'm going to blow up the President, that's going to give you probable cause, but more importantly, it's going to give you qualified immunity. Here, the problem is that it wasn't implicated as a reason for arrest. It was a situation between the two, and it came about after the arrest, meaning the statement was made after the arrest. So this is the unusual case, not the normal case. Well, I think the way the Ninth Circuit applies qualified immunity, and I actually think this is correct, is if the – it's a question of fact as to whether the officer actually was legitimately considering the speech and deciding whether to arrest or whether the officer was not and simply acting based on animus. Sotomayor If police officer Wright wasn't present when Officer Nieves had his interaction with the defendant, Respondent, here, how could he have been animated by the animus? Fisher Well, all the other speech that Mr. Bartlett was engaged in, in the interaction with Mr. – with Officer Waite, and the – he was – Sotomayor I'm sorry. I keep thinking Wright, but it is Waite. Fisher It was Officer Waite, and he was challenging Officer Waite's authority to do what he was doing. That is protected conduct, but at the same time, when paired with other conduct and the sense of danger that Officer Waite perceived. Ginsburg Is animus on the part of Waite? Fisher I'm sorry, Justice Ginsburg. Ginsburg The question I thought, Justice Sotomayor, was asking was what is the – what is the animus that – with which Waite is charged? Fisher So there are two theories of animus, and these were briefed in the – in the district court and at the Ninth Circuit. For Officer Waite, the animus – the alleged animus is that he was essentially retaliating because he didn't like Mr. Bartlett challenging his authority. For Officer Nieves, the – the alleged retaliation is that he was retaliating and he was motivated because Mr. Bartlett didn't engage with his questioning earlier. So you have two separate theories of retaliation. You have two different actors. You have a fast-paced situation. This is going to be an incredibly complex situation for the jury to disentangle. Sotomayor Why is this any more complex than racial discrimination? Meaning in almost all situations involving racial discrimination or allegations thereof, it's complex. Mixed motive cases are the norm, not the exception. So why should we treat this differently? We're now tiering things. We're tiering a right, the First Amendment, above – below racial discrimination. I don't know – are you – your rule would encompass religious discrimination, and so that's now less important than racial discrimination. Should we be creating exceptions to the clear statutory command that any person who violates a constitutional right should be held responsible? Well, to answer your – your last point first, Justice Sotomayor, Section 1983 created an action at law for violation of federal rights. And actions of law are subject to defenses and immunities, and the elements of these actions have claims. And all of these – and prevent recovery even in some instances where we think that there would be – there might have been an actual violation of a constitutional right. And the same is true with arrests. At common law, if the officer had lawful authority to make the arrest, then that was end of story and the arrest was privileged. And that's the – that's the principle that Congress didn't silently abrogate when it enacted Section 1983, and that rule also works well for these cases because there is a subset of First Amendment claims that involve an arrest. It's the same as Congress. This is a difficult issue, which we've heard a couple of times now already, because there are a range of cases. And at one end, I think, there is a case that's sort of like this case, where you've got the disorderly person situation. A police officer arrives at the scene where two people or two groups of people are shouting at each other, and in the course of the – while the officer is present, one of them says something insulting to the officer, and that person ends up getting arrested. And so you have the question of whether that's – that has to go – that may have to go to trial as to the officer's motivation. Was it because the kind of fuzzy standard of disorderly conduct was met, or was it because the person – what the person said about the officer? So you've got that category, maybe, at one end. At the other end, you have a case like a journalist has written something critical of the police department, and then a couple of days later, a week later, two weeks later, whatever, some period of time, is arrested – is given a citation for driving 30 miles an hour in a 25-mile-an-hour zone. So your – what you ask us to do would create a problem in the latter situation. What the other side asks us to do may create a problem in the disorderly person situation. So do you have any way of solving this other than asking us to decide which – which rule – which of these unattractive rules we should adopt? Well, I think the probable cause element actually does a good job of capturing the subset of these claims when there actually is a First Amendment violation. And you have two – two of the cases we cited in our brief survived summary judgment. There was probable cause for the arrest, and they went to a jury. These were cases involving journalists. And in both those cases, the jury returned a verdict for the defendants. And so I think probable cause actually does sort well. But I think what Justice Alito is suggesting is that in the second category of cases – and you can think of it as the journalist case or you can think of it as a case where an individual police officer, you know, decides to arrest for jaywalking somebody wearing a Black Lives Matter T-shirt or alternatively a Make America Great Again cap or something like that – you know, that – that there might be probable cause. The person jaywalked. He jaywalked. And the point is that there are so many laws that people can break that police officers generally look the other way. But, you know, you're saying something that the officer doesn't much like, so he doesn't look the other way. I think – so with the jaywalking cases, and I'd start by pointing out that at least in Alaska and probably the vast majority of states, you can't arrest someone for jaywalking. And if someone did, they would likely be disciplined. You know, they're driving, and they have a bumper sticker that the police officer doesn't like, and he pulls them over when he wouldn't otherwise pull them over because the person had failed to signal a turn. And if you look through the cases that are cited by the parties in amici, the case of I pulled someone over, and they had a Hillary 2016 bumper sticker, and that's the alleged basis for the retaliation, you don't see them. Those cases are incredibly rare. And the court in Hartman decided that it wasn't going to design the rule for the vanishingly rare case. It was going to design the rule for the typical case. Oh, we saw the case. Ginsburg. My two things about your position. Would you, we have Lozman on one side. Would you say, Lozman apart, no retaliatory arrest claim unless the plaintiff shows the absence of probable cause? Would you say that across the board, four retaliatory arrest claims save only the Lozman category? That is our position, Justice Ginsburg. And then one other thing about your position. On the probable cause. Probable cause for the charged offenses or probable cause for some offense that wasn't charged? I think in that respect, the court's rule should recognize that police officers are arrested based on the course of conduct and they aren't legal technicians. So I think that at a minimum, the court's rule should, the probable cause element should apply for the stated crime of arrest or the crimes charged or crimes closely related to those crimes. And whether it has to go further to address a situation like the court was dealing with in Lozman, I don't think this case presents that question. Breyer. What do you think of efforts to reach a compromise between the two cases that Justice Alito raised? We saw in Lozman a case where I think in the courtroom someone said, well, surely there's some statute he violated. Now, that doesn't sound like a good case for your side. So among other things I've written down, we have one, Mount Healthy, plaintiff. He engaged in protected expression. That won't be too hard to show. The defendant harbored retaliatory animus. In a lot of these cases, he did, for political or racial maybe or other reasons. Three, animus was a substantial factor motivating the decision. That's a little tougher to show, where there's probable cause. And then even in the absence of the probable cause, even in the absence of protected conduct, he would have reached the same decision. That's beside the point. Suppose we added to that, and we took what Justice Rehnquist said in Crawford L., that if you get to the stage where you get through one, two, and maybe three, and there is probable cause for something, the plaintiff has to show, with some objective evidence, that the arrest was a pretext for retaliation. That's one way of doing it. That's Justice Rehnquist's way. A second way is that you have to know that you at least have to know the arresting that there is a statute that forbids what he did. You can't find it out later. Or no reasonable person would have arrested or no reasonable policeman without the animus would have arrested this person for this thing in the moment. That's after you prove that he had a bad motive, the policeman. Now, there might be others. But what I'm looking for, looking to what Chief Justice Rehnquist said and others that come at the spur of the moment, is some way of guarding against the danger that Justice Alito said in his second example without destroying and raising the huge problem that lay in his first example. So I give you three that I don't – I'm not buying the three I gave. I just want to set you on a track thinking of that. Well, I think some of those rules or suggestions that you gave, Justice Breyer, I think would be very difficult for courts to administer as, for example, the no reasonable police officer would arrest it. Let's say now no reasonable police officer in Washington, D.C., no reasonable police officer in a specific neighborhood of Washington, D.C. Facts of arrests are incredibly varied. The minor details matter. And I think that's going to be a very difficult analysis for courts to engage in. And it's not a clear-blind rule. So in Crawford – I'm sorry, not in Crawford, Al – in Armstrong, for cases of selective enforcement, the court left open the possibility in a footnote that if there were a direct admission of discriminatory animus, then the plaintiff would not necessarily have to show that there was similarly situated people being treated differently, which is the normal thing that a plaintiff has to show for those types of claims. I think the court could do something similar. I think the problem with that is what the court recognized in Hartman, is that the exception becomes, again, difficult to administer. What's a direct admission? And how does the court draw that line? And that's going to be litigated in a variety of cases. I mean, I think the court obviously has carved out exceptions in the past, and most recently in Lozman. But I think those exceptions can be problematic. And I think the best rule, again, is the clear, bright line of, if there was probable cause for the arrest, then there's no liability for a retaliatory arrest. You base that in part on the practical and policy concerns that you started with that you raise, and Justice Alito also points out. But the Ninth Circuit has had experience for a number of years with a rule that has allowed suits like this to proceed, and at least based on the briefing, it doesn't show any massive problem, or correct me if I'm wrong about that. Well, I think the data is a little bit noisy, because until recently you had qualified immunity that would bar a lot of these claims. And I think if the court rules in the respondent's favor, as the consciousness of that rule trickles down, you'll have more and more retaliatory arrest claims being stated. And I also think it's not just the – Well, why wouldn't – explain to me on the qualified immunity. Justice Sotomayor had raised that, too. Why doesn't that solve the issue? I think qualified immunity works in the subset of cases, and I think it's a narrow subset, where it's not clearly established that the person's speech was protected. But I think that's going to be a subset of cases. Right. But the bottom line point is the Ninth Circuit, it's been a number of years now, has had the rule contrary. And I would have expected if there were the problems that you articulate, and I understand why you articulate them, and maybe they will come about as a result of a decision from this court in more numbers, but there hasn't been a huge problem. Well, I think they will. And, you know, the rule was established, clearly established in the Ninth Circuit in 2013. A lot of the decisions you have coming out involve conduct from before then. And so that's why I think you haven't seen maybe the rise in the number of cases that I think a ruling in the Respondent's favor will require. And it's not just the total quantity of claims. It's also the fact that the Court's ruling on this issue has the potential to affect how police officers conduct themselves in the field. Am I correct that the Ninth Circuit – Well, I don't want to take up your rebuttal time, but just very quickly. The Ninth Circuit has developed its own special qualified immunity rule for use in this particular situation. I think it's more of a rule of summary judgment. It's the standard – Summary – its own summary judgment rule. Its own summary judgment rule. It doesn't seem to be really consistent with our summary judgment of cases. It doesn't – I apologize, Justice Alito. No. Is that correct or not? That's correct. I don't think it's consistent with Rule 56. I think it's the kind of procedural fudge that the Court rejected in Crawford L., and I think it's also exactly what the D.C. Circuit was doing in Hartman, in the opinion that the Court overruled. Thank you, counsel. Mr. Wall. Mr. Chief Justice, and may it please the Court, two points. First, every similar constitutional tort claim under 1983 has an objective requirement that prevents a purely subjective inquiry into officers' motivations. If anything, it is more important that claims of retaliatory arrest be subject to such a screen, because as the bipartisan States' brief from D.C. points out, they're easy to allege and difficult and expensive to defend against. Second of the two – Well, Mr. Wall, I mean, in the Fourth Amendment context, for example, the fact that there's a probable cause requirement is a function of the substance of the Fourth Amendment. What's unusual about this case is that you're asking for a probable cause requirement that bears no relationship to the actual First Amendment violation. In other words, it makes no difference to the First Amendment that there might have been probable cause for an arrest if, in fact, the arrest occurred as a result of retaliation for protected speech. So the plaintiff made exactly the same argument to this Court in Hartman, Justice Kagan, and the Court rejected it, I think, for the reason that although, of course, what you're trying to get at is was the officer's motivation the speech or the unlawful conduct, the probable cause evidence is the best way to get at that across the range of cases. But as I read Hartman, Hartman was very dependent on two factors, neither of which is here. The first is that the prosecutor is absolutely immune, so that you were dealing with upstream actors, and the causation was very difficult. And the second was that there was a presumption of regularity that attached to prosecutorial action. And the combination of both those things meant that the Court said, you know what, in the usual case or in the, you know, in the more than usual case, in the almost always case, the prosecutor's action has cleansed whatever retaliatory motive you can find further upstream. And here, neither one of those two things is true. So let me take them in turn, and I think that isn't sort of fair to the other parts of Hartman, because it did rely on other things that I think do apply equally here, but just for those two, yes, the fact that you had multiple actors in Hartman and one of them was absolutely immune did make the causal inquiry difficult. But I don't think we should understand Hartman as just a case about prosecutors. I think reading Justice Souter's opinion, although that was the reason why the causal inquiry was difficult, what he's focused on is the factual difficulty of causation, and he says the body of probable cause evidence is the best way to get at that across the range of cases. And although we don't have the same presumption of regularity for officers that we do for prosecutors, we do have an even more ironclad rule under the Fourth Amendment, which is that every arrest is per se reasonable for purposes of the Fourth Amendment where you have probable cause. And so in the same way that you have the presumption of regularity gives you some reason with prosecutors to think it wasn't induced by the animus, I think the Moore rule gives you the same rule where you have an arrest that's supported by probable cause. I think that's a very good reason to think that's why the officer was doing what he was doing. JUSTICE BREYER. What if we try to sort of bell the cat here by at the moment we've got speech and we have some animus against the speech and we have a rule that says, officer, you have probable cause, that's it. That's what you want. That's it. Goodbye, plaintiff. Now, suppose we weaken that and simply say where there's probable cause, yes, that's it, unless there is objective evidence that it was a pretext. For example, when you have the judge six years later trying, going through the statute books to try to find a statute that fit with improbable cause for the arrest, that sounds pretty much like objective evidence of a pretext where the officer arrests him for something that nobody's ever been arrested before. For that, in this circumstance, sounds like a pretext. And so why not do that? That's a compromise. It gives some protection to the First Amendment without avoiding the most horrible mess that you're afraid of. And it's been suggested before. So why not? CHIEF JUSTICE ROBERTS. So those are two very different things, Justice Breyer. The second may be real. I think the first is a paper tiger. On the first, if the Court sets it up to say, look, probable cause is important evidentially to the officer's motive unless you have some evidence of pretext for all the rest, that's essentially if the case like this one, if facts like these get you to the jury, right, you come in with a statement and you say the officer indicated because of his statement, which isn't captured on video, but you just allege it and you have to take it as true, if that gets you to a jury, I don't think that's actually going to do anything. But the second thing you point to is different, right? That's the Devenpeck rule. That's the question of, which the Court at Lozeman was interested about last time, when do you have to identify the offenses at the time of the arrest, shortly thereafter, or leading up to some criminal proceeding? Now, for the reasons in our brief, we'd urge the Court to adopt Devenpeck. But I do think if the Court drew in that rule further away from the trial or limited it at the outset of a civil proceeding, I think that would be a meaningful limitation. I just think that the first one that you sketched out, where it's sort of the weighing of the evidence, I think if you look through the cases, that's going to allow all these things to go to the jury, and that was the one thing I wanted to say to you, Justice Alito, which is, look, I think we have by far the best reading of the common law in Hartman, but even if the Court disagrees with us doctrinally, if you look at the cases, you just do a simple Westlaw search for retaliatory arrest, hundreds and hundreds, about 250 in the Ninth Circuit alone just post-Reichel, just in the last 5 years. The number of those that have credible allegations of your second scenario, very few. And every one of those has gone to a fact finder. The fact finder has rejected that it was retaliatory animus that drove the arrest. Sotomayor, whenever there's probable cause and there's a First Amendment allegation, what's really being complained about is discriminatory arrest. So what if we were to say that a party making such a claim has to plead and ultimately prove that there is a comparator who engaged in similar conduct or people who were similar and they engaged in the same conduct but they were not arrested? So I don't – so the common law didn't have a rule and the court in Hartman didn't look there, and I think the reason it's going to be a problem is that you might be able to run the analysis in the riot and the protest cases, though those are a fairly small fraction of the cases. But in virtually all of them, there's not going to be a comparator. I mean, I'd encourage the Court to look at the video here, both of them. Alito, if there's no comparator, then the plaintiff is out of luck. That's right, but I don't think that really is going to track the cases that the Court's worried about on anybody's view. It's almost a two-defendant-friendly view because you can have an arrest that isn't supported by probable cause that seems fairly obviously retaliatory and there are some of those that go forward in the lower cases, lower courts, and the plaintiffs prevail, but they won't be able to show a comparator because it was a one-on-one interaction with the officer. So I just don't think that's going to pick up the right set of cases on the city. Kagan. Kagan.                         I think the but is that if the Court wants to draw limits on these to try to get at cases where the officers or the prosecutors are just kind of inventing probable cause after the fact to paper over an arrest that was problematic, you could limit the probable cause inquiry to the some reasonable time frame after the arrest. Now, I don't think you can do just the arrest because, you know, you get back to the station house, you consult with the prosecutors, and it turns out the statute's not waiving the weapon. It's reckless endangerment. But everybody knows it's the same course of conduct. But you could set some timeline on it like that, and we suggested in our brief as a fallback from Devenpak that where you have criminal charges, it's the charges identified up to and through the criminal complaint, or in the absence of charges, it's the first stage in the civil litigation when the defendants say, look, you haven't shown a lack of probable cause. There was probable cause for these offenses in their response to the motion to dismiss. You could limit it there. So you wouldn't end up with the Lozman type situation where you have parties casting about at trial. Sotomayor, Mr. Wall, the Lozman kind of situation, at least based on the cert petitions that we see, is not so uncommon. Small municipalities where people are supporting one police chief over a different one, or someone who has alleged that the police department in that municipality is corrupt, and all of a sudden they're getting a slew of, you know, 25 to 50, building code, jaywalking, crossing a yellow light, every misdemeanor, every violation humanly possible. Your rule would insulate that behavior. So the question is, is the burden that you're speaking about of there being perhaps you've pointed to ten examples, the briefs, of cases that in your view should not have gone to a jury in the Ninth Circuit. So less than half a percent of the cases that were filed alleging retaliatory arrests have actually gone to trial. Is it worth giving up the protections of 1983 for such a fundamental right as the freedom of speech right? My answer, Mr. Chief Justice? Sure. So three very quick points. The claims are common, but they are not often meritorious. We don't want to insulate them from liability. You just don't get damages under 1983 just as you didn't at the common law. But there are other mechanisms. And the reason it hasn't been a huge problem is because until recently you've had qualified immunity, which you won't have going forward. The Ninth Circuit has warped the summary judgment standard. And a lot of these cases settle because they know in the Ninth Circuit they're going to have to go to a jury. Thank you, counsel. Mr. Wilson. Mr. Chief Justice, and please the Court. In Lozman v. City of Riviera, this Court rejected the Petitioner's absolute rule requiring proof of a lack of probable cause in all First Amendment retaliation cases. As the Court did in Lozman, the Court should reject the rule here for three primary reasons. First, it would bar meritorious First Amendment cases, retaliation cases, regardless of the evidence of proof supporting those cases. Second, it is not required to screen out meritless cases. And lastly, it lacks any grounding in the common laws that existed in 1871. Excuse me. I'll start with my first point. The Petitioner's rule requires dismissal of First Amendment retaliation cases with compelling evidence of retaliatory conduct. Ginsburg. Can you clarify what is the First Amendment conduct in which Bartlett engaged? Yes. With respect to both offices. What was the speech element? With respect to Officer Nieves, Mr. Bartlett questioned why Officer Nieves wanted to speak with him. That angered Officer Nieves. And then he told Officer Nieves that he did not wish to speak with him and asked him to leave him alone. So the speech is the right, the expression of interest is the right not to speak. Is that true? That was part of it, but it was also combined with an expression of I haven't done anything wrong, please leave me alone. And how about the other Officer Waite? In reference to Officer Waite, Officer or, excuse me, Mr. Bartlett approached and expressed his opinion that Officer Waite did not have the right to speak with the minor who had accompanied him to this party without his parent being present. And that angered Officer Waite and then led to the situation where about this time Officer Nieves arrives and then you have the video, what's left of the video, picking up at that particular junction. I'm interested in the third point you made, I think it was, or maybe it was the second one, that there are other mechanisms for screening out the meritless cases. Is that right? Yes, Your Honor. Was that point two or three? That was my last point, but I can go to it. On the last point, I assume that you believe that in this case your client's claim would survive qualified immunity and summary judgment. It satisfies Twombly and it would survive qualified immunity. Yes, Your Honor. And that, doesn't that refute your claim that those doctrines would rule out the rather trivial cases? In terms of the client's anything that was of social importance, this is just, I mean, he's not protesting some social issue or making some important point. He's involved in a personal dispute with a police officer. Your Honor, my client was expressing his disagreement with how the officer was conducting his investigation, what he was doing there. In City of Houston v. Hill, this Court identified the right to criticize a police officer as one of the distinguishing features between a police State and a free country. And so I would certainly submit to the Court that that is an extremely important interest. But, Mr. Wilson, I think, you know, it's obvious what the paradigm case is that gives a problem to this side, but it's also obvious what the paradigm case is that gives a problem to you, and it's the one that Justice Alito mentioned earlier on. It's an encounter between a police officer and a citizen that goes south. And part of going south is that the person who is stopped engages in lots of backtalk to the police officer, which, in combination with some forms of conduct, gives the police officer reason to think that the person should be arrested to prevent some real harm. So whether it's a resisting arrest, arrest, or whether, you know, it's a disorderly conduct or whatever it is. And there's likely to be speech involved in those problematic encounters where we think it's possible that the police officer should arrest the person in order to prevent any greater danger. So what do we do with that category of cases? If the speech is in any way, if there's any question whether or not the police officer has a right to take that speech into account, then the plaintiff is going to lose those cases on the basis of qualified immunity. And there's been a number of those cases. For example, the Fogle v. Collins case, where there was speech involved on the van and it was talking about a bomber or something like this, and the officer made contact with that individual, detained them, investigated them, et cetera, and the court said qualified immunity, you're entitled as a police officer. Robertson, I don't mean to interrupt your answer, but aren't those going to be factual issues in dispute that won't be resolved until trial? I don't – in a lot of the cases, the speech that was engaged in doesn't particularly seem to be in dispute. In Fogle v. Collins, the speech wasn't in dispute. Robertson, Well, it's a question of motive, right? Well, there's two different things. Robertson, A question of animus or intent. You have issues where there's the speech as a question, then you shift to cases where the question of the officer's intent becomes relevant. And this is one of my points that I think I haven't been able to answer. I want to come back to Justice Alito's question, but I want to answer Your Honor's question, too. At this time in the Court's history, we have a situation where the interactions between the citizen and the police officer are being subjected to increasing technology. More and more in the future cases that come before this Court, you see it already in some of the cases that have been in front of this Court, the interaction between the citizen and the police officer is going to be videotaped, recorded, et cetera. Well, yeah, let's assume it is a case where it's all videotapes, and it's really high-quality video, and you've got sound, too. And what it shows is that the individual who's ultimately arrested is arguing with other people, and they're calling each other names, and they're waving their hands, and the person who's arrested says some insulting things to the police officer, and then some period of time goes by, maybe it's 30 seconds, maybe it's 2 minutes, maybe it's 3 minutes, the person is arrested. And the arrestee says, the only reason why I was arrested was because I exercised my free speech right to criticize the police officer. That is a question of subjective intent, and I don't see how it is going to be weeded out at the pleading stage, or on qualified immunity, or even on summary judgment. But you explain to me how that could be weeded out, or maybe you think it shouldn't be. I think it can be weeded out and would be weeded out, Justice Alito. Simply because an arrest, a potential arrestee is rude or says offensive things does not establish that the officer retaliated against that arrestee for that conduct. And whenever you have the interaction between the citizen documented, then if there isn't any evidence that shows that the officer retaliated, you can be rude, you can say the things that you want to, but that doesn't mean that the officer retaliated against them. Kagan. But what does that mean? What kind of evidence do you need? Do you need the person who is bringing the suit to say the officer said that he was arresting me because of something I said? Is that what you're looking for? I don't think that that's what you necessarily need. I think what you need is to meet the Mount Healthy test, both prongs of the Mount Healthy test. You need to prove that but for your speech you would not have been arrested, and then the arresting officer certainly has the opportunity to say, hey, we would have arrested you in any instance. But that just sounds like a jury question, so we would be sending every single one of these cases to a jury. I don't believe that you would be sending every one of these cases to the jury. And this, again, gets back to the fact that these cases are going to be documented. There's going to be a lot of evidence about this. And the Court can look at that evidence and evaluate that evidence in a summary judgment context. But they're not all going to be documented. I mean, you know, you take an event like this, you've got 10,000 mostly drunk people in the middle of nowhere, and you've got eight police officers. I mean, how are all those going to be documented? There's never going to be a situation where everything is documented, Chief Justice. But 29,000, if I got the number right, 29,000 arrests every day, maybe I'm wrong,  but they're going to be documented, by which you mean on film, right? I mean, audio, video, other means to document the interaction that took place. And let me just, there's a couple of things. Breyer, I have the same problem. I don't see how summary judgment deals with this, because you would have thought you'd have a plaintiff, and on the one hand, the plaintiff would have said, I did interrupt the officer, I did criticize the arrest, or criticize what he was doing, I said, you're unfair or worse. Then you have a police officer who says, that isn't why I arrested him. Then you have the plaintiff who says, but I can show you, given the look on his face, given what he said to his colleague, given what dot, dot, dot, dot, dot, it is why he arrested me. Now, no one doubts that if the plaintiff is right, that is clearly a violation of the law. So what is summary judgment to do with it? The jury either believes his story or believes the defendant's story. And that's why we're thinking a large proportion will go to the jury. I won't repeat myself. Your Honor, I think it's telling in the State of Alaska, and this case in particular. The State of Alaska is not the cutting edge of technology. And yet in the State of Alaska, the evidence was the testimony from Lieutenant Pascoia, who was the supervisor of both of the officers involved in this case. 95 percent of the interactions between police officers and citizens are recorded in the State of Alaska. Breyer. Well, that has nothing to do with it, really, because in some different State, the State of Oshkosh, I don't know, in a different State, there are a lot of people who do say rude things about police officers in their hearing. And there are police officers who do sometimes arrest them. And there are a set of ambiguous circumstances as to what the true reason was. If the defendant is right, nothing wrong happened. If the plaintiff is right, it is a serious violation of the law. That's the issue in this case. And you tell me there won't be cases like that, I find that hard to accept. I'm not telling you there isn't going to be cases like that. No, but you're saying there aren't many. And after this opinion comes down in your favor, they're saying there will be more. I think that the experience in the Ninth Circuit disproves the concern that the Court has expressed there. And I would just go back to a case, Tower v. Glover, that I think is very telling. You want to talk about something that's easy to say. It's easy to cry out that the sky is falling. The hysterics. That the sky is falling. The hysterics. You know, if you allow this case, we're going to be overrun with cases. Well, look at what they said in Tower v. Glover in the context of a client suing a public defender. One of the defenses in that was, if you allow this case, we're going to be overrun with litigation against public defenders. Breyer's quite the argument. The argument, as I understand it, is, one, yes, there will be more cases. Two, the jury might decide most of them correctly, by the way, but there will be some not. And three, this will have a very, perhaps for better, perhaps for worse, an effect on policemen that they will be very careful and not arrest people whom they should arrest. Now, that's the kind of argument that I think is being made. Certainly. And the only thing that a police officer needs to be concerned about is a focus on enforcing the law. And as long as a police officer remains loyal to enforcing the law, then this situation takes care of itself. That's a very cavalier assertion. And I get back to the fact you have eight officers, you have 10,000 people, you have a lot of drinking. I would say the police officers are worried about a lot of things. And one of the things they're worried about is the first time you get an in-your-face interaction with one of these people, you want to get them, you know, cuffed and out of the way. If it's something within the range of disturbing or disorderly, you don't want to sit there and think about it too long. That's fair enough as a general concern. It doesn't particularly, in our view, have much traction in light of the facts of this case. Bear in mind that the only way you could communicate at this particular event was to get close to somebody and speak with them. There's a very different – whenever you start talking about probable cause to arrest somebody, there's probable cause in a church and there's probable cause whenever you're out in the middle of Alaska next to a DJ that's blaring out music extremely loud. Did Mr. McCoy have reason to fear Officer Waite when Officer Waite was standing half the distance that ultimately Officer Waite and Mr. Bartlett were standing? Mr. Bartlett – the evidence in this case from Mr. Bartlett's standpoint is he approached Officer Waite in a nonthreatening manner and simply communicated with Officer Waite in a manner that accomplished him being able to hear that communication. So the idea that this is people screaming at each other in a church simply isn't borne out by the facts of the case. You said that an officer merely needs to enforce the law, but the problem, I think, is that in a lot of interactions that lead to an arrest, there's going to be something critical said potentially of the police before the arrest is made. That certainly potentially is. Common sense, common understanding tells us that people say things critical in a hot situation, right? And so all of those cases, if it's more than rude and offensive, but rude and offensive with something critical of the police, will go to a jury. Why not? Absolutely not. Why not? Because a potential suspect's obnoxious behavior does not form the basis of the police. I understand obnoxious, but obnoxious – I'm sorry to interrupt, but obnoxious with something critical or skeptical of the police, which leads to the claim that I was arrested because I expressed my view of the police. It's not going to get to the jury because it's not evidence of the officer's intent. And if you don't get evidence, you don't have sufficient evidence to establish the officer's intent was to retaliate against you for that free speech, then you lose. Or if you mind putting – suppose you add, then, the word that there has to be objective evidence that the – even though there was probable cause, there still has to be defeat the probable cause if there is objective evidence that the probable cause was a pretext for the arrest. That's the Rehnquist. I'm interested in what you think of alternatives. Read through – you're just saying in your briefs, Mount Healthy. But the two last parts of Mount Healthy are worrying in this context because there are riots. They do exist. People do get hurt. And the police have to somehow weed out the people who are engaged in serious, physical, riotous behavior, or worse, from those who are the innocent bystanders or just are participating because of their beliefs, et cetera. That's very hard. That's why I'm looking for something that isn't quite Mount Healthy, but may be close. Well, I think that the opinion that was written by Justice Ginsburg in Reichel and the situation where you have on-the-spot safety issues, that those generally would result in summary judgment because the truth, again, in our opinion, the truth comes out. And the truth, as a trial attorney, one thing I would like to emphasize to this Court is the truth is a much more stubborn and powerful thing that I think this Court gives its credit for in many of its decisions. The truth has a way of exerting itself in these circumstances. And the – in those situations, that would ordinarily result in summary judgment because no reasonable juror is going to believe that whenever an officer is confronting an immediate, compelling safety issue, that actually the reason you arrested this particular defendant is because he made an insult about your haircut or about your mother. The cases involving safety issues are not the ones that are troubling. They're the cases involving lesser crimes, like the one that your client was charged with. And there are many – there are areas of the law where intent has to be proven. And in those areas of the law, direct evidence of an unlawful intent is often not present. But is it not the case – you can answer this as a trial lawyer – is it not the case that intent is very often inferred based on a sequence of events? So someone exercises the First Amendment right to say something, and shortly after that, there's retaliation again. Some adverse action is taken against that person. Can you not infer intent based just on that sequence of events? If the evidence is compelling enough to do so, I would say yes. But you have to bear in mind here, I've heard the saying that, you know, these are easy to make and hard to defend. I would add some qualifications to that as a trial attorney. They may be – they're relatively easy to plead, but they're very hard to prove. Establishing somebody else's intent is not an easy thing to do. You need to have good evidence to do that. But evidence means a trial. Well, I think you need to have it at summary judgment, to defeat a summary judgment evidence. You need to have enough evidence to convince the Court that a reasonable juror could find in your favor. And that evidence can take a wide variety of forms. And we're certainly not here to do that. This category of case has been called contempt of cop, as distinguished from a journalist who wrote something critical of the government. And so in all of these encounters, there'll be rude behavior to the police officer, and there'll be an arrest for whatever. And you're saying – I still don't understand how you limit the cases that will go to trial and the ones that will be weeded out. Let me start with the first point that's going to take care of a significant number of these cases. And that is that if you bring the charges on cases where you have the proof that the crime's been committed, and you prosecute the case and you obtain a conviction, you've eliminated that entire class of cases, because the damages go away, the righteous indignation of I was wrongfully accused, I was unjustly attacked in the name of justice, you've eliminated those situations as a practical matter. And I think that there's another area where these cases get screened out. And that is that, let's be honest, to succeed or have a chance to succeed in one of these cases, you need to have an attorney who's going to take your case. And I don't think that it's – I think it's very telling that you take, for example, Ford v. City of Yakima, or you take, for example, Mr. Bartlett's case. This case arises in the first instance from an attorney who represented both of those Why did the damage? Your first example, you say, well, you have to try and then get a conviction. I mean, the officer is entitled to take the action he does on the basis of probable cause. And the fact that a prosecutor later on would decide, okay, at this particular moment in the middle of, you know, all that's going on, as you can see in the video in this case, that maybe the arrest was valid, but it's not worth prosecuting. I didn't say that you have to. What I said is that if you do, you've eliminated that entire category. Why? Because as a practical matter, number one, you don't see him. You read through all of the cases that have been cited before this Court on first amendment retaliation. There's very, very few that have any – But theoretically, the person, even if they are arrested, prosecuted, and convicted, could say, I never would have been arrested in the first place but for the retaliatory motive. Under Heck v. Humphrey, your damage – Is that correct or not? I apologize, Your Honor, if you could restate the question for me. The person in your example who is arrested, then prosecuted, and convicted, you said that claim would never go forward. And I'm not understanding, at least theoretically, why that is so, because the person would say, I never would have been arrested in the first place, and everything that followed would never have occurred either, but for the retaliatory motive of the officer. People can say what they want to say. But the fact of the matter is, in those circumstances, there's no damage. The damage, whenever you've been convicted under Heck v. Humphrey, you can't challenge anything that has in any way would impugn that – the validity of that conviction and that judgment. You also said earlier that the Ninth Circuit experience on summary judgment had shown that this was not a huge problem, which I think is a good point for you. But as Justice Alito pointed out, hasn't the Ninth Circuit watered down the summary judgment standard in some ways to achieve that result? Your Honor, what I would describe the Ninth Circuit as doing is vigorously applying this Court's Mount Healthy test, and applying that in a summary judgment context. And there's really, I don't think, any intellectual distinction between what the Ninth Circuit is doing and this Court's Mount Healthy test, except it's focused on applying it in a summary judgment context. And it's taken all the evidence. It remains truthful to the truth, seeking out the truth, which is all that Mr. Bartlett has ever asked to do, either in the criminal case, or before this Court, or the district court, or the Ninth Circuit court, is that he be allowed to pursue the truth when he has evidence to support his verdict. Kagan, I'm wondering what you make of Mr. Wall's proposal, or maybe he wouldn't call it a proposal, maybe he would call it a fallback position, but the idea that there is a probable cause requirement, but that it's limited in particular by getting rid of the Devenpeck rules. So it would be limited to crimes that are identified by a police officer around the time of the arrest. Our belief is the best rule is that evidence of probable cause is one of the factors that the Court should be looking at in this area. And in many instances, it very well may be a dispositive factor. But in many instances, it may not be, and it isn't, because the probative force of probable cause really varies depending on the severity of the offense. I don't think that anybody is going to succeed in a First Amendment retaliation case because the officer arrested them because there was probable cause to believe they committed a homicide. It's just simply not credible. Sotomayor, So why don't we go back to the rule, or why don't you advocate the rule that you set forth in your brief, that a probable cause requirement applies to felonies, but not misdemeanors? I think the we are comfortable with that rule with one slight clarification, and that is that I think the use of the word serious offenses is a more apt description. But certainly, it would exclude petty offenses, and that's really the only issue that the Court So you're thinking there are some misdemeanors that are fairly serious. I could imagine some that might be. So I see. I take your point. But certainly, petty offenses, and where this issue arises is not in murder investigations. It arises where the officer's discretion is at its zenith, in terms of him putting his desire, whether he wears his emotions on his sleeve, or whatever it is about an officer that motivates him to act in these situations. And they involve petty offenses, obstructing the sidewalk, disorderly conduct. It amounts to nothing other than the officer's kind of way to retaliate in some circumstances against an individual because they've exercised their free speech rights. Is disorderly conduct always a petty offense? I think in most instances it is, but there's some, I can envision some that it may not be. If, in fact, disorderly conduct So it's not enough to just look at what the charge is? I think that, again, what we're proposing is, is that the Court view probable cause in light as a significant factor, but not necessarily a controlling factor, in whether or not you can stay the first minute retaliation case. And that allows the Court to stay focused on the truth, loyal to the wording of Section 1983, and at the same time, get to the bottom of these cases in an efficient manner. And I want to talk, just if I could, real briefly about the common law. And I'll make one other point before I get there. In Tower v. Glover, this Court talked about, you know, said, well, the hysterics. You know, the defense to this is that if you allow this, the sky is going to fall. You're going to be overrun with this litigation. The Court's answer to that in Tower v. Glover was, if that's true, you need to make that argument to Congress. You don't put this Court in a legislative role because you believe that the law as drafted by Congress is going to lead to a non-desirable result. In Tower v. Glover, the Court said, that is up to Congress to decide, not this Court. Roberts. And what law is Congress supposed to change? The Section 1983, for example, in the Prisoner Litigation Reform Act. Whenever Congress perceived that prisoner litigation was out of control, they went back and they amended Section 1983 to deal with that problem. The Congress argument can cut both ways, of course. If we were to follow the Hartman analogy here and to follow what the other side says is the common law, Congress could always change the law to expand. So I'm not sure that gets you that far. Well, it gets us that far because the starting point is, what does the statute say? Well, the starting point is precedent, what the statute says and what the precedent says we look at the common law. So we have two strands of precedent to look at. One, look at the common law analogies and the other is just Hartman itself. And to do both those strands of precedent, I think you're about to respond to those, but I would like you to. Sure. And I guess there's an important concession, I believe, in this case by the petitioners. And that concession is that at the common law, that there was no probable cause defense to a wrongful arrest for misdemeanors. There's no dispute amongst the parties as to that point. This is a misdemeanor offense. The common law rule would be no defense of probable cause for a misdemeanor offense, the petitioners lose. I think the petitioners say that that was because there was no right to arrest at all. But they're wrong about that. And as the first statement makes clear, a constable had the right to arrest for an affray and they also had the right to arrest for offenses that were committed in their presence. And so they did have the right to arrest. And nonetheless, even though they had those rights, they were held liable if they got it wrong. And so I think that the Court need not go no further in this case to look at the common law and say no PC defense, no probable cause defense for misdemeanors at the common law. If you want to look to the common law for guidance in this case of a wrongful or retaliatory arrest, that means that the petitioners lose. Alito, it's been a consideration and that the Court does not necessarily just impart them in whole, but it can facilitate that consideration. And so I think that the Court should adopt various things as it sees in light of the tent of section 1983. Alito, do you think we should do that here or I thought you were arguing a minute ago that we should just adopt whatever the common law rule was? My point was, is if you go to the common law, our position is you start at the statute, the statute says we prevail in this case. If you go to the common law, the common law says that we prevail in this case. And even when you get into the felony area, the one case where this Court has spoken in that regard was Dinsman v. Wilkes. And it said in Dinsman v. Wilkes that the only defense, the only instance where probable cause was a defense is in a retaliatory prosecution case, which this Court has already addressed in the Hartman v. Moore circumstance. So I don't think that if you go down that path, it gets you where they want to go in any instance. So that's our analysis of the common law and kind of fitting those pieces together. I did want to touch this real briefly on one kind of aspect of the – I see I'm out of time. Roberts, you can touch briefly on it. I'll just say the typical case. I think it's very important for this Court to realize what the typical case is not. It's not the cases that are concerning this Court about this issue. The typical case is where, like in Ford v. City of Yakima, there's actually – what drives these cases is hard evidence, solid evidence that there's a retaliatory intent on the part of the officer, frequently recorded or otherwise documented firmly. Thank you. Roberts. Thank you, counsel. Two minutes, Mr. Borgeson. Thank you. And I start out by pointing that this case in front of the Court is a typical arrest scenario that the Court needs to be concerned about in crafting the rule. On the common law point, it's not correct that there was never authority to arrest based on probable cause for misdemeanors at common law. The authority depended on a specific law of the jurisdiction and statute. But the bigger point is that when the common law did authorize officers to arrest based on probable cause, then if there were probable cause to make that arrest, the arrest was privileged and there would be no liability. And that's the rule we're asking for here, where today virtually every officer is authorized to arrest based on probable cause. A small point, I don't think it's correct that a conviction for a crime bars a retaliatory arrest lawsuit arising out of that crime. It's the Mihailovici v. Snyder case, and I apologize, it's a Westlaw site and I don't know the citation off the top of my head, but one was made and survived summary judgment despite the fact that the plaintiff had been convicted of the offense. And that makes sense for the reason Justice Kavanaugh was pointing out. Heck doesn't bar those claims because in heck, the bar is would the civil litigation call into question the validity of the criminal judgment? And a retaliatory arrest litigation doesn't call into question the validity of the criminal judgment, it just says that should have never happened or wouldn't have ever happened, if not for the bad motive. Thank you, counsel. The case is submitted.